No. 24-cv-07348 (BMC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

O'BRIAN PASTRANA,

Plaintiff,

-against-

NEW YORK CITY FIRE DEPARTMENT, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (DOHMH) and THE CITY OF NEW YORK,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

*MURIEL GOODE- TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-315*
*New York, N.Y.  10007*

*Of Counsel:  Ruth Jeannite*
*Tel: (212) 356- 2695*
*Matter No. 2024-093439*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

     A.  Background ............................................................................................ 2

     B.  The City's Reasonable Accommodation Process .................................. 3

     C.  Plaintiff Allegations in the Complaint .................................................. 4

ARGUMENT

     POINT I

          DOHMH AND FDNY SHOULD BE DIMISSED
          FROM THIS ACTION BECAUSE BOTH ARE
          IMPROPER PARITES ................................................................... 9

     POINT II

          PLAINTIFF SUBSTANTIVE DUE PROCESS
          CLAIM SHOULD BE DISMISSED BECAUSE
          THE VACCINE MANDATE DOES NOT VIOLATE
          SUBSTANTIVE DUE PROCESS ........................................... 10

          A.  Plaintiff fails to identify a fundamental right at
              stake. ................................................................................. 10

          B.  The Vaccine Mandate does not shock the
              Contemporary Conscience. ................................................ 12

     POINT III

          PLAINTIFF FAILS TO STATE A CLAIM UNDER
          THE NEW YORK STATE HUMAN RIGHTS LAW
          ........................................................................................... 13

          A.  Standard of Review .......................................................... 13

          B.  Plaintiff Fails to Allege a Qualifying Disability
              Under the SHRL and CHRL .............................................. 13

**Page**

POINT IV

      PLAINTIFF FAILS TO SHOW THAT AN
ACCOMMODATION REQUEST WAS DENIED
UNDER THE STATE AND CITY HUMAN
RIGHTS LAW ........................................................................... 16

POINT V

      PLAINTIFF FAILS STATE A CLAIM FOR CHRL
FAILURE TO ENGAGE IN A COOPERATIVE
DIALOGUE UNDER THE CITY HUMAN
RIGHTS LAW ........................................................................... 18

CONCLUSION ............................................................................................ 19

CERTIFICATE OF COMPLIANCE ........................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)......................................................................................................13, 14

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)........................................................................................................ 13

Broecker v. N.Y.C. Dep't of Educ.,
   2023 U.S. Dist. LEXIS 55541 (E.D.N.Y. 2023), aff'd 2023 U.S. App. LEXIS 30076
   (Nov. 13, 2023)..............................................................................................................2

Broecker v. N.Y.C. Dep't of Educ.,
   585 F. Supp. 3d 299 (E.D.N.Y. 2022) ...........................................................................3

Coughlin et al. v. N.Y.S. Unified Court Sys.,
   No. 22-CV-04002(FB)(JMW) (E.D.N.Y. Oct. 27, 2023) ............................................ 11

Emanuel v. New York,
   2009 U.S. Dist. LEXIS 111016 (S.D.N.Y. Nov. 25, 2009) ......................................... 16

Facci-Brahler v. Montgomery Cnty.,
   No. 18 cv 941 2020 U.S. Dist. LEXIS 10292 (N.D.N.Y. Jan. 22, 2020) ..................... 14

Garland v. N.Y. City Fire Dep't,
   574 F. Supp. 3d 120 (E.D.N.Y. 2021) ...........................................................................3

Garland v. New York City Fire Dep't,
   574 F. Supp. 3d 127 (E.D.N.Y. 2021), aff'd 2024 U.S. App. LEXIS 2651 (Feb. 6,
   2024) ..............................................................................................................................2

Gertskis v. City of New York Dep't of Health & Mental Hygiene,
   2014 U.S. Dist. LEXIS 88020 (S.D.N.Y. 2014) ............................................................9

Goldman v. Sol Goldman Invs., LLC,
   2022 U.S. Dist. LEXIS 140927 (S.D.N.Y. 2022) ........................................................ 18

Hurd v. Fredenburgh,
   984 F.3d 1075 (2d Cir. 2021)..................................................................................10, 11, 12

Jacobson v. Massachusetts,
   197 U.S. 11 (1905)....................................................................................................... 12

Jeanty v. Newburgh Beacon Bus Corp.,
   No. 17-CV-9175 (CS) 2018 U.S. Dist. LEXIS 197248 (S.D.N.Y. 2018) .........................2

**<u>Cases</u>**                                                                                               **<u>Pages</u>**

<u>Jones v. Nat'l Commun. & Surveillance Networks</u>,
  409 F. Supp. 2d 456 (S.D.N.Y 2006) .......................................................................9

<u>Kaluczky v. City of White Plains</u>,
  57 F.3d 202 (2d Cir. 1995) ................................................................................. 10

<u>Kane v. De Blasio</u>,
  19 F.4th 152 (2d Cir. 2021) ................................................................................ 11

<u>Kane v. De Blasio</u>,
  623 F. Supp. 3d 339 (S.D.N.Y. 2022) ..............................................................11, 12

<u>Maniscalco v. N.Y. City Dept. of Educ.</u>,
  2021 U.S. Dist. LEXIS 184971 (E.D.N.Y. Sep. 23, 2021) ....................................10, 12

<u>Mercer v. Viacomcbs/Paramount</u>,
  2024 U.S. Dist. 132578 (S.D.N.Y Jul. 26, 2024) ....................................................... 14

<u>New Yorkers for Religious Liberty, Inc. v. City of New York</u>,
  125 F.4th 319 (2024) ......................................................................................... 11

<u>Norman v. NYU Langone Health Sys.</u>,
  492 F. Supp. 3d 154 (S.D.N.Y. 2020) .................................................................... 16

<u>O'Donnell v. King B 100, LLC</u>,
  2016 U.S. Dist. LEXIS 193981 (N.D.N.Y. 2016) ...................................................... 15

<u>Phillip v. Dep't of Sanitation</u>,
  2019 U.S. Dist. LEXIS 32590 (E.D.N.Y. 2019) ..........................................................9

<u>Phillips v. City of New York</u>,
  775 F.3d 538 (2d Cir. 2015) ................................................................................ 12

<u>Police Benevolent Ass'n of the City of New York, Inc. v. de Blasio</u>,
  No. 85229/20121 (N.Y. Sup., Rich. Cty.) ..................................................................2

<u>Rizzo v. N.Y.C. Dep't of Sanitation</u>,
  97 F. Supp. 3d 200 (E.D.N.Y. 2015) ..................................................................... 18

<u>Rochelle v. Autozoners</u>,
  2023 U.S. Dist. LEXIS 193446 (S.D.N.Y. 2023) ...................................................... 19

<u>Shi v. Batgatelle Int'l, Inc.</u>,
  No. 20 cv 8473 2023 U.S. Dist. LEXIS 109930 (S. D. N.Y. Jun. 26, 2023) ................................ 15

**Cases**                                                                  **Pages**

Southerland v. City of New York,
    680 F.3d 127 (2d Cir. 2012) ................................................................. 11

In the matter of the Application of Andrew Ansbro, as President of the
    Uniformed Firefighters Ass'n v. de Blasio,
    No. 159738/2021 (N.Y. Sup, N.Y. Cty) ........................................................2

In the matter of the Application of Corr. Officers' Benevolent Ass'n, Inc. v. City of
    New York,
    No. 161034/2021 (N.Y. Sup, N.Y. Cty) ........................................................2

Vangas v. Montefiore Med. Ctr.,
    6 F. Supp. 3d 400 (S.D.N.Y. 2014) ......................................................... 18

Washington v. Glucksberg,
    521 U.S. 702 (1997) ....................................................................... 10

Weiss v. Inc. Vill. of Sag Harbor,
    762 F. Supp. 2d 560 (E.D.N.Y. 2011) .......................................................2

Yuyan Lin v. Amazon.Com Servs., LLC,
    2024 U.S. Dist. LEXIS 171545 (E.D.N.Y. Sep. 28, 2019) ................................13, 14, 17

**Statutes**

Fed. R. Civ. P. 12(b)(6) ......................................................................1, 13

N.Y.C. Admin. Code § 8-102 ................................................................... 18

N.Y.C. Admin. Code § 8-102(16) ............................................................... 17

N.Y.C. Admin. Code § 8-102(16)(a) ............................................................ 14

N.Y.C. Charter Ch. 17, § 396 ....................................................................9

N.Y. Exec. Law § 292(21) ..................................................................14, 16

N.Y. Exec. Law § 296(3) ..................................................................... 16

**Other Authorities**

https://www.cdc.gov/vaccine-safety/vaccines/covid-19.html (last accessed on
    February 28, 2025) ...................................................................... 15

**Cases**                                                                                                    **Pages**

https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-
    reasonable-accommodation-process.pdf (last accessed February 28, 2025) ...............5, 6, 7, 8

## PRELIMINARY STATEMENT

Plaintiff O'Brian Pastrana ("Plaintiff") a former New York City Firefighter, commenced this action against the New York City Fire Department ("FDNY"), the New York City Department of Mental Health and Hygiene ("DOHMH"), and the City of New York ("City"), (collectively, "Defendants"), alleging that the COVID-19 vaccine mandate applicable to employees of the FDNY ("Vaccine Mandate") violated substantive due process under the Fourteenth Amendment to the United States Constitution, that Defendants failed to accommodate him in violation of the New York State Human Rights Law ("SHRL") and New York City Human Rights Law ("CHRL"), and that Defendants failed to engage in a cooperative dialogue in violation of the CHRL. However, Plaintiff's claims fail for a number of reasons.

First, DOHMH and FDNY are not suable entities and are improper parties to this action. Second, Plaintiff's substantive due process claim fails because, as is consistent with well-established law in the Second Circuit, the Vaccine Mandate does not implicate any fundamental rights. Third, Plaintiff's SHRL and CHRL failure to accommodate claims lack merit because Plaintiff fails to allege that he had a qualifying disability at the time of his purported accommodation request. Further, Plaintiff's failure to accommodate claims fall short under the both the SHRL and CHRL because, contrary to Plaintiff's claims, any request by Defendants that Plaintiff undergo an allergy test does not equate to a denial of his accommodation request. Finally, Plaintiff's claim that Defendants failed to engage in a cooperative dialogue is unsupported by the facts, and Plaintiff's own allegations in the Amended Complaint demonstrate that Defendants engaged in good faith discussions with Plaintiff concerning his request.

For these reasons, and as set forth more fully below, Defendants respectfully request that the Court dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS[1]

### A.    Background

On October 20, 2021, the former Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), Dave A. Chokshi, issued a Commissioner's Order ("COH Order") requiring all New York City employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. by October 29, 2021 ("Vaccine Mandate").  The Vaccine Mandate has been repeatedly upheld as lawful by every Court that has considered it.

Indeed, critical to this case is that the Vaccine Mandate has withstood multiple legal challenges in New York.  See, e.g., Broecker v. N.Y.C. Dep't of Educ., 2023 U.S. Dist. LEXIS 55541 (E.D.N.Y. 2023), aff'd 2023 U.S. App. LEXIS 30076 (Nov. 13, 2023); Garland v. New York City Fire Dep't, 574 F. Supp. 3d 127 (E.D.N.Y. 2021), aff'd 2024 U.S. App. LEXIS 2651 (Feb. 6, 2024); Gonzalez v. City of New York, 2024 U.S. Dist. LEXIS 56814 (E.D.N.Y. 2024); Police Benevolent Ass'n of the City of New York, Inc. v. de Blasio, No. 85229/20121 (N.Y. Sup., Rich. Cty.); In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Ass'n v. de Blasio, No. 159738/2021, (N.Y. Sup, N.Y. Cty); In the matter of the Application of Corr. Officers' Benevolent Ass'n, Inc. v. City of New York, No. 161034/2021 (N.Y. Sup, N.Y. Cty).  Each court found the Vaccine Mandate legally sound and enforceable. Further, the Vaccine Mandate created a condition of employment for City employees, including Plaintiff, to be vaccinated.  On this point, the law is clear. See Gonzalez, 2024 U.S. Dist. LEXIS

---

[1] Plaintiff's factual allegations are presumed to be true only for the purposes of this motion to dismiss.  This statement of facts is derived from the allegations in, and documents annexed to, the Complaint and the lettered exhibits annexed to the Declaration of Assistant Corporation Counsel Ruth Jeannite, dated February 28, 2025 ("Jeannite Decl.") accompanying this memorandum of law.  The Court may properly consider the documents annexed to the Jeannite Decl. because they were incorporated by reference in the Complaint or that are integral to plaintiff's claims.  See Jeanty v. Newburgh Beacon Bus Corp., No. 17-CV-9175 (CS) 2018 U.S. Dist. LEXIS 197248, *10 (S.D.N.Y. 2018) (quoting Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted)).

56814; <u>Garland v. N.Y. City Fire Dep't</u>, 574 F. Supp. 3d 120, 128 (E.D.N.Y. 2021); <u>Broecker v. N.Y.C. Dep't of Educ.</u>, 585 F. Supp. 3d 299 (E.D.N.Y. 2022) (holding that the COVID-19 vaccine mandate applicable to New York City Department of Education employees created a "lawful condition of employment."). Thus, the Vaccine Mandate is unassailable and legally sound.

The law of this case – as well as holdings in similar cases brought in the Southern District of New York and New York Supreme Court – is likewise clear that because vaccination against COVID-19 was a condition of employment, non-compliant employees could be terminated based on their failure to satisfy this condition.

**B.    The City's Reasonable Accommodation Process**

In response to the COH Order, the City established additional procedures specific to requests for vaccination-related accommodations in an effort to address the anticipated increase in accommodation requests. One day after the issuance of the Vaccine Mandate, on October 21, 2021, the Department of Citywide Administrative Services ("DCAS") issued guidance with respect to the vaccination requirement, which included the "FAQ on New York City Employees Vaccine Mandate," (see https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/faq-vaccine-mandate.pdf (last accessed on March 1, 2025) and a document entitled, "Applying for a Reasonable Accommodation from the Covid-19 Vaccine Mandate." <u>See</u> https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (last accessed March 1, 2025). These documents laid out the guidelines for seeking an exemption from the Vaccine Mandate through a reasonable accommodation request. Any City employee who was denied a reasonable accommodation by their agency had the right to appeal that denial. <u>Id</u>. All appeals were reviewed by the City of New York Reasonable Accommodation Appeals Panel ("Citywide Panel"). The Citywide Panel was

created specifically in response to the COH Order to consider appeals filed by employees whose accommodation requests had been denied by their respective agencies.

Furthermore, on October 21, 2021, FDNY's Chief of Operations sent buck slip OPS-21- 10-08 ("Buck Slip") to all commands informing employees of the COH Order. The Buck Slip contained a summary of the Vaccine Mandate and a copy of the entire COH Order and FAQs. The Buck Slip also set forth the process by which an employee could apply for a religious or medical exemption to the Vaccine Mandate.

## C.    Plaintiff Allegations in the Amended Complaint

Plaintiff alleges to have begun his employment with the FDNY in 2006 as an Emergency Medical Technician. See Amended Complaint ("AC") ¶ 23. Plaintiff alleges that he "is permanently disabled from the COVID-19 vaccine." Id. ¶ 5. Plaintiff alleges that the COVID-19 vaccine mandate "violated his fundamental right to bodily integrity," and that he was "coerced […] into receiving the second dose" of the vaccine after allegedly experiencing an alleged "anaphylactic reaction to the first dose of the COVID-19 vaccine" Id. ¶¶ 6, 9. Plaintiff alleges that the "COVID-19 vaccines only reduce symptoms of those who are infected by COVID, but not transmission of the virus. They are, therefore, treatments, and not vaccines as that term has always been defined in the law." Id. ¶ 54.

Plaintiff alleges that "Defendants notified Plaintiff that he would be placed on Leave Without Pay and risk termination if he did not provide proof of vaccination by October 29, 2021," and that on October 29, 2021, he "received the first dose of the Pfizer COVID-19 vaccination to comply with the City's Vaccine Mandate." Id. ¶¶ 71-72. Plaintiff alleges that "[i]mmediately thereafter, he developed "hives, swelling of his lips, sweats, chills, and body aches." Id. ¶ 73. Plaintiff further asserts that, "[e]ach day, he woke up with more significant swelling of his lips, face, and nose, as well as hives," and that he "took Benadryl, Allegra, and

4

Claritin with no relief. Id.  Plaintiff alleges that he waited for three days, until November 1, 2021, to seek treatment from the FDNY Bureau of Health Services ("BHS"). Id. ¶ 74. Plaintiff alleges that BHS diagnosed him with "COVID-19 vaccine side effect," and placed him on medical leave until the next day. Id.

Plaintiff alleges that "he told Defendants' agent […] he was afraid to get the second dose because of his apparent allergic reaction and expressed concerns over getting the second dose." Id. ¶ 75. Plaintiff alleges that his concerns were dismissed, and that he was told to "continue getting vaccinated and that he was required to be fully vaccinated to continue his employment with the FDNY despite his stated need for medical accommodation." Id. ¶ 76.  Plaintiff alleges that he continued to "experience persistent symptoms, including hives, significant swelling of his lips, face, and nose, as well as sweats, chills, and body aches," which, he claims, clearly meet the CDC's guidelines for a contraindication to receiving the second dose of COVID-19 vaccine." Id. ¶ 78. Plaintiff alleges that on November 15, 2021, after reporting to duty "at the firehouse," he "had to be taken from the firehouse to the hospital in an ambulance while on active duty due to the worsening and severity of his allergic reaction, which included rash, hives, and swelling in the lips." Id. ¶ 79.  Plaintiff alleges he was immediately treated in the ambulance intravenously, and then he was seen in the emergency room and was given epinephrine, a drug commonly used to treat anaphylaxis, along with prednisone."  Plaintiff alleges that he was prescribed prednisone and an EpiPen. Id. Plaintiff alleges he was put on medical leave by the FDNY." Id. ¶ 80.

Plaintiff alleges that on November 16, 2021, he was again seen by BHS, at which he "expressed his concerns about receiving the second dose due to his ongoing severe and pervasive allergic reaction, and the fact that he was still taking prednisone." Id. ¶ 81. Plaintiff alleges that he was told "that he would have to be fully vaccinated in order to work even though

he had a clear medical contraindication." Id. Plaintiff claims he asked the BHS doctor "about obtaining a medical exemption for the second dose of the COVID-19 vaccine," and that he was informed that "the only way to qualify for a medical exemption was to provide allergy test results confirming an allergy to the vaccine." Id. ¶¶ 82-83.  Plaintiff alleges that after his emergency room visit on November 15, 2021, "he had to take prednisone to keep his symptoms at bay." Id. ¶ 84. Plaintiff asserts during this time, even on prednisone, "he was still suffering from shortness of breath, swelling, and hives." Id. Plaintiff asserts that "as soon as he discontinued the prednisone, his symptoms worsened to the point where he needed to be rushed to the emergency room again." Id. ¶ 85.

Plaintiff alleges that on November 21, 2021, "he was again seen in the ER with "worse shortness of breath and hives."" Id. ¶ 86 (emphasis in original). Plaintiff alleges that he was "diagnosed with "anaphylaxis." Id.  Plaintiff alleges that on November 22, 2021, he "sought an allergy evaluation from […] an allergist," and that the allergist "informed him that the test could not be performed because he was currently taking prednisone to treat his ongoing allergic reaction, which would interfere with the accuracy of the results. Id. ¶ 87.

Plaintiff alleges that "FDNY promulgated a "Buckslip and Memo" to employees, outlining the procedures regarding the City's COVID-19 Vaccine Mandate." Id. ¶ 90. Plaintiff does not allege that he followed these procedures or that he submitted a reasonable accommodation request pursuant to the procedures. Instead, Plaintiff claims that FDNY should have accommodated him by allowing weekly PCR testing instead of the second vaccine dose. Id. ¶ 89.

Plaintiff alleges that, "[b]ased on the Defendants' agents [sic] representations, [he] understood that he would not be allowed a medical accommodation, despite his repeated requests for help and severe reaction, unless he could show proof that he had an allergy to the vaccine,

through laboratory testing." Id. ¶ 96.  Plaintiff alleges that he "tried to get laboratory testing from an allergist," but that "he was told that he could not have the tests done because he was on medications for his anaphylaxis, so the tests "would not work."" Id. ¶ 97 (emphasis in original). Plaintiff alleges that he "did not want to submit to the second dose but was coerced by Defendants," who failed to offer any accommodation and repeatedly informed him that he had no choice but to get vaccinated if he wanted to keep his job." Id. ¶ 98.  Plaintiff asserts that [o]n November 23, 2021, at the FDNY's direction, despite fear and serious reservations," he received the second dose of the COVID-19 vaccine." Id. ¶ 99.

 Plaintiff alleges that "after his second dose, his medical condition further deteriorated, and he developed shortness of breath, chest pain, decreased oxygen levels, and a worsening of his swelling and hives." Id. ¶ 100.  Plaintiff asserts that he "presented to his doctor at Crystal Run Healthcare and was transferred to the emergency room," where he was "again seen in the ER and treated with IV steroids and a full regimen for allergic reactions." Id.  Plaintiff alleges that a "note from Saint Luke's Cornwall Hospital emergency room, dated [November 30, 2021], noted the member had acute urticaria post COVID vaccine injection." Plaintiff asserts that he was "treated with IV methylprednisolone and IV famotidine as well as Benadryl." Id. ¶ 101.

 Plaintiff asserts that "[d]espite medication, his symptoms continued, leading to prompting cardiac testing." Id. ¶ 102. Plaintiff claims that the testing "revealed reduced Left Ventricular Ejection Fraction and fibrosis," and that Plaintiff "definitely suffers from side effects due to the vaccine." Id.  Plaintiff alleges that in January, 2022, he followed up with the cardiologist. Id. ¶ 103.  Plaintiff asserts that on January 25, 2022, he was seen again by BHS, where he was "diagnosed […] with myocarditis and COVID-19 vaccine side effect, both of which were labeled "service connected."" Id. ¶ 103 (emphasis in original). Plaintiff further claims that Dr. Hurwitz

noted that he "was recently seen by a cardiologist who feels he has active subacute myocarditis." Id.

Plaintiff alleges that on February 9, 2022, he was again seen by BHS, where he "diagnosed […] with myocarditis and COVID-19 vaccine side effect, both of which were noted to be service connected." Id. ¶ 104. Plaintiff claims that on February 22, 2022, he underwent a cardiac MRI at NYU Langone, for which he was referred by BHS, and that the findings indicated "LV diminished systolic function (LVEF 40%), RV mildly diminished systolic function (RVEF 45%)," "patchy and linear areas of mid wall LGE involving the basal and mid LV septum suggestive of nonischemic myocardial fibrosis." Id. ¶ 105. Plaintiff further alleges "there is relative hypokinesia of the mid LV septum and some dyskinesia of the distal mid and apical LV lateral wall suggestive of dyssynchrony." Id. Plaintiff alleges that in March 2022, he "was diagnosed with COVID-19." Id. ¶ 107.

Plaintiff alleges that due to his worsening condition, BHS "opined" that he was permanently unfit for firefighting duties. Id. ¶ 113. Plaintiff alleges that on May 2, 2023, FDNY's Medical Board granted him "Ordinary Disability retirement for his Fire Commissioner's application for myocarditis with ongoing symptoms. Id. ¶ 116. Plaintiff alleges that, "as a result of the Defendants' Vaccine Mandate and their failure to accommodate, [he] suffers from depression and anxiety," "regularly receives ongoing mental health treatment, " that "he has been diagnosed with ongoing posttraumatic stress disorder, and adjustment disorder with depressed mood." Id. ¶ 122. Plaintiff also alleges that "[a]s a result of the Defendants' Vaccine Mandate and their failure to accommodate, Plaintiff physically suffers from permanent cardiovascular disability, chronic fatigue, trouble breathing, chest pain, loss of energy, shortness of breath, and small fiber neuropathy." Id. ¶ 123. Plaintiff claims that "his family life is also suffering," as he "cannot play

catch with his young daughter," "help his wife around the house," or, "afford mortgage payments or basic necessities due to the loss of income." Id. ¶ 124.

## **ARGUMENT**

### **POINT I**

### **DOHMH AND FDNY SHOULD BE DIMISSED FROM THIS ACTION BECAUSE BOTH ARE IMPROPER PARITES**

Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17, § 396. Section 396 "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." See Phillip v. Dep't of Sanitation, 2019 U.S. Dist. LEXIS 32590, at *11 (E.D.N.Y. 2019) (dismissing claims brought against an agency of the City of New York and holding that the agency "was immune from suits, and all claims against the [agency] must be brought against the City of New York.").

Here, Plaintiff names FDNY and DOHMH as defendants, both which are agencies of the City of New York. See Jones v. Nat'l Commun. & Surveillance Networks, 409 F. Supp. 2d 456, 469 (S.D.N.Y 2006) (FDNY is non-suable entity pursuant to section 396); see also Gertskis v. City of New York Dep't of Health & Mental Hygiene, 2014 U.S. Dist. LEXIS 88020, at *5 n.2 (S.D.N.Y. 2014) (DOHMH is not a proper defendant).  Accordingly, all claims against FDNY and DOHMOH must be dismissed and both agencies dismissed as defendants here.

## POINT II

## PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE DISMISSED BECAUSE THE VACCINE MANDATE DOES NOT VIOLATE SUBSTANTIVE DUE PROCESS

Plaintiff's claim that the Vaccine Mandate violated his substantive due process rights is without merit.  "To analyze a claim under substantive due process, courts perform a two-step analysis." Maniscalco v. N.Y. City Dept. of Educ., 2021 U.S. Dist. LEXIS 184971, at *5 (E.D.N.Y. Sep. 23, 2021) (citing Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021).  The first step is "to identify the constitutional right at stake." Id. (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995)). The second step requires that plaintiff "'demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' such that the Due Process Clause 'would not countenance it even were it accompanied by full procedural protection.'" Maniscalco, 2021 U.S. Dist. LEXIS 184971, at *7-8 (quoting Hurd, 984 F.3d at 1087).

### A.    Plaintiff fails to identify a fundamental right at stake.

"'Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" Maniscalco, 2021 U.S. Dist. LEXIS 184971, at *4-5; Hurd, 984 F.3d 1075.  "Not all rights are entitled to protection [;] only rights that are fundamental or implicit in the concept of ordered liberty are accorded protection under substantive due process."  Maniscalco, 2021 U.S. Dist. LEXIS 184971 (citing Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997).

Plaintiff's substantive due process claim must be dismissed because Plaintiff fails to identify a fundamental right at stake.  It is well settled in the Second Circuit that the Vaccine Mandate, and vaccine mandates in general, do not implicate any fundamental right.  As set forth

10

above, substantive due process is the notion that the Constitution protects certain rights from government intrusion without legitimate justification. Kane v. De Blasio, 623 F. Supp. 3d 339, 359 (S.D.N.Y. 2022) (quoting Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012)), aff'd in part, New Yorkers for Religious Liberty, Inc. v. City of New York, 121 F.4th 448 (2d Cir. 2024). To succeed on such a claim requires plaintiffs to plead facts meeting the aforementioned two-step analysis. Id. (citing Hurd v, 975 F.3d at 1087-89).

Here, Plaintiff fails from the outset to identify that a fundamental right is at stake. Instead, Plaintiff, who, notably, does not allege to be a medical doctor nor expert on either COVID or the COVID-19 vaccine, sets forth various conspiratorial claims about the effectiveness of the COVID-19 vaccines, including that the COVID-19 vaccines are "not vaccines," and are "medical treatments," and thereafter, despite the Second Circuit making clear the Vaccine Mandate is subject to rational basis review, claims "that the government cannot infringe upon an individual's liberty without compelling justification," and wrongly concludes that the Vaccine Mandate is subject to strict scrutiny. See AC, generally; see also New Yorkers for Religious Liberty, Inc. v. City of New York, 125 F.4th 319, 324 (2d Cir. 2024).

It is undeniable, however, that the Second Circuit Court has definitively found the COVID-19 Vaccine Mandate to be constitutional on its face, and that "in all its iterations, is neutral and generally applicable." See Kane v. De Blasio, 19 F.4th 152, 166 (2d Cir. 2021). The Vaccine Mandate applied equally to all City employees. As such, the relevant inquiry is whether there is a rational basis for the enforcement of the Mandate. And that hurdle is easily met. See Kane, 19 F.4th at 166 (2d Cir. 2021); see also Coughlin et al. v. N.Y.S. Unified Court Sys., No. 22-CV-04002(FB)(JMW) (E.D.N.Y. Oct. 27, 2023).

The Second Circuit has consistently rejected claims that vaccine mandates are subject to strict scrutiny or that they implicate a fundamental right. Though Plaintiff attempts to assert that the Vaccine Mandate implicated a fundamental right, he fails to do so here. For this reason alone, Plaintiff's substantive due process claim fails and must be dismissed.

**B.     The Vaccine Mandate does not shock the Contemporary Conscience.**

Even if Plaintiff did show here that a constitutional right was implicated by the Vaccine Mandate, which he did not, Plaintiff must still demonstrate that the Vaccine Mandate was so egregious, so outrageous, that it "shocks the contemporary conscience." <u>Maniscalco</u>, 2021 U.S. Dist. LEXIS 184971, at 7-8 (quoting <u>Hurd</u>, 984 F.3d at 1087). Plaintiff cannot meet this standard. Courts in this district have recognized that there is a long history of mandatory vaccination laws in this country, which have been consistently upheld as constitutional. <u>See</u>, e.g., <u>Kane</u>, 623 F. Supp. 3d at 359; <u>Phillips v. City of New York,</u> 775 F.3d 538, 542 (2d Cir. 2015)). And the Supreme Court found mandatory vaccines to be constitutional well over a century ago. <u>Jacobson v. Massachusetts</u>, 197 U.S. 11 (1905).

Despite Plaintiff's irrelevant claims about the effectiveness of the mandate and his fantastical claims that the COVID-19 vaccine is a "treatment" and not a "vaccine," Plaintiff fails to show that the Vaccine Mandate constitutes conduct so egregious as to "shock the contemporary conscience." As the Supreme Court held in <u>Jacobson</u>, individual rights are not absolute and may be subject to reasonable restrictions when necessary to protect the common good. <u>See</u> <u>Jacobson</u> 197 U.S. at 28. Plaintiff's personal objections and mischaracterizations of the COVID-19 vaccine do not alter this well-established precedent. Accordingly, Plaintiff's substantive due process claim is without merit and must be dismissed.

**POINT III**

**PLAINTIFF FAILS TO STATE A CLAIM UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**

**A.    Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts adequate "to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. While on a motion to dismiss, the court takes all factual allegations as true, it need not do the same for legal conclusions, including those "couched as a factual allegation." Id. Indeed, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. The complaint must plead facts showing a plausible claim and not merely the possibility of a claim. See id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief,'" and must be dismissed. Id. at 678.

**B.    Plaintiff Fails to Allege a Qualifying Disability Under the SHRL and CHRL**

To maintain a prima facie claim under the SHRL and CHRL for failure to accommodate, "an employee must show that: '(1) he is a person with a disability under the meaning of the relevant statute; (2) an employer covered by the statute had notice of disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" Yuyan Lin v. Amazon.Com Servs., LLC, 2024 U.S. Dist. LEXIS 171545, at *13 (E.D.N.Y. Sep. 28, 2019).

Under the SHRL, a "disability" is defined as:

> A physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques.

N.Y. Exec. Law § 292(21). By contrast, the CHRL defines disability more broadly, encompassing: "any physical, medical, mental, or psychological impairment, or a history or record of such impairment." Administrative Code § 8-102(16)(a).

Here, Plaintiff fails to plausibly allege that he had a qualifying disability at the time he allegedly requested an accommodation to the Vaccine Mandate. First, Plaintiff's assertion that he suffered a "severe allergic reaction" after the first vaccine dose is insufficient to meet the SHRL's definition of a disability, which requires that an impairment either prevent the exercise of a normal bodily function or be demonstrable by medically accepted clinical or laboratory diagnostic techniques. Lin, 2024 U.S. Dist. LEXIS 171545, at *14. Plaintiff has not alleged that his condition of allegedly being allergic to the COVID-19 vaccine impaired any bodily function, nor has he provided any objective medical diagnosis confirming a long-term impairment present when he requested an accommodation to the Mandate. A mere assertion of a medical condition, without factual support demonstrating how it meets the legal definition of disability, is conclusory and insufficient to state a claim. See Mercer v. Viacomcbs/Paramount, 2024 U.S. Dist. 132578 (S.D.N.Y Jul. 26, 2024) (concluding that the plaintiffs' claimed allergic reaction to the COVID-19 vaccine was insufficient to make out a plausible claim of a disability under the SHRL). See Facci-Brahler v. Montgomery Cnty., No. 18 cv 941 2020 U.S. Dist. LEXIS 10292 (N.D.N.Y. Jan. 22, 2020) (concluding that the plaintiff's "conclusory" description of her disability insufficient to survive the Iqbal standard).

Plaintiff alleges that "FDNY knew that [Plaintiff] suffered an anaphylactic reaction to the first dose of the COVID-19 vaccine." See AC ¶ 6. Plaintiff further alleges on November 1, 2021, he was diagnosed with "COVID-19 vaccine side effect" by FDNY's BHS.  Id. ¶ 74. However, the "side effect" alleged by Plaintiff regarding the vaccine whereby he allegedly experienced hives, swelling, chills, and body aches are merely symptoms that are commonly associated with potential temporary vaccine side effects after taking the COVID-19 vaccination. (See  https://www.cdc.gov/vaccine-safety/vaccines/covid-19.html  (last accessed on March 1, 2025). Courts have consistently held that even under the liberal SHRL and CHRL standards, temporary conditions do not qualify as disabilities. See Shi v. Batgatelle Int'l, Inc., 2023 U.S. Dist. LEXIS 109930 (S.D.N.Y. 2023) (citing Mehmet Emin Tatas v. Ali Baba's Terrace, Inc., 2022 U.S. Dist. LEXIS 60796, at *30-32 (S.D.N.Y. 2022)) (The court relied on precedent holding that temporary conditions lasting two to twelve weeks are not disabilities under the SHRL or CHRL and ultimately held that Plaintiff's basal cell carcinoma did not qualify, as it neither substantially limited a major life activity nor was a long-term impairment.).

Moreover, Plaintiff's allegation that on November 15, 2021, he was taken from the firehouse by ambulance due worsening allergic reaction symptoms, and was administered epinephrine and prednisone, does not establish that he had a qualifying disability at the time of his accommodation request. Indeed, that alleged incident occurred more than two weeks after his alleged first dose of the COVID-19 vaccine on October 29, 2021. AC ¶¶ 72, 79. And a temporary reaction that resolves within a matter of days or weeks does not meet the statutory definition of a disability under the SHRL. O'Donnell v. King B 100, LLC, 2016 U.S. Dist. LEXIS 193981, at *9 (N.D.N.Y. 2016) (holding that injuries sustained from motorcycle accident which required little or

no treatment and "did not otherwise limit his physical abilities" did not qualify as a disability under the SHRL).

Finally, Plaintiff's attempts to use any later diagnoses to support his claim that he had a physical impairment at the time of his accommodation request is unavailing. Indeed, under both the SHRL and CHRL, a plaintiff must establish that they had a qualifying disability **at the time of the accommodation request**, not based on later medical developments. See Norman v. NYU Langone Health Sys., 492 F. Supp. 3d 154 (S.D.N.Y. 2020) citing Emanuel v. New York, 2009 U.S. Dist. LEXIS 111016 at *7 (S.D.N.Y. Nov. 25, 2009) (finding medical incident two months after request for an accommodation not probative as to whether the plaintiff was disabled at the time an accommodation was sought). Here, Plaintiff alleges that he sought an exemption from the second dose based on a reaction to the first dose, and allegedly had not been diagnosed with myocarditis or any other impairment beyond temporary vaccine side effects. Which again, under the law, do not meet the definition of a disability. N.Y. Exec. Law § 292(21). Plaintiff alleges that he was diagnosed with myocarditis on January 25, 2022. AC ¶ 103. Because his myocarditis diagnosis only occurred after he received the second dose, it cannot serve as the basis for his disability-based accommodation request here. An employer's obligation to provide an accommodation is assessed based on the circumstances known at the time of the request—not on medical conditions that develop later.

## POINT IV

### PLAINTIFF FAILS TO SHOW THAT AN ACCOMMODATION REQUEST WAS DENIED UNDER THE STATE AND CITY HUMAN RIGHTS LAW

The SHRL requires employers to reasonably accommodate disabled employees unless such an accommodation would impose an "undue hardship" on the business. N.Y. Exec.

Law § 296(3). The CHRL mandates that employers provide reasonable accommodations to employees with disabilities, so long as the employee can still satisfy the "essential requisites" of the position. N.Y.C. Admin. Code § 8-102(16).  As discussed hereinabove, Plaintiff fails to establish that at the time of his accommodation request he had a disability under either the SHRL or CHRL. Accordingly, Plaintiff was not entitled to an accommodation, and his failure to accommodate claim should be dismissed on this basis alone.

Even assuming *arguendo* that Plaintiff sufficiently alleges a SHRL- or CHRL-qualifying disability, which he does not, his claim still fails because he does not allege facts supporting that his alleged reasonable accommodation request was outright denied. See AC, *generally*.  And under both statutes, a failure to accommodate claim requires a showing that an employee requested a reasonable accommodation, and that the employer explicitly denied that request. See Lin, 2024 U.S. Dist. LEXIS 171545, at *13 (S.D.N.Y. 2024) ("A failure-to-accommodate claim exists only when an employee asks for a reasonable accommodation and the employer explicitly denies that request.").

Specifically, Plaintiff asserts that the "only way to qualify for a medical accommodation was to show proof that he had an allergy to the vaccine through laboratory testing." AC ¶¶ 83, 188, 23, 275. Plaintiff admits that he did not submit the requested laboratory test results, citing his use of prednisone as the reason he was unable to complete the test. Id. ¶¶ 87, 97.  During BHS' engagement with Plaintiff, Defendants provided a clear avenue for seeking an exemption to the Vaccine Mandate, and informed Plaintiff of the documentation requirements. Plaintiff further admits he believed his request would be denied and, under the perceived threat of termination, he "felt coerced" into taking the second dose of the vaccine. Id. 18 ¶ 96-99. However, an employee's speculative concerns about the outcome of the accommodation process do not

establish that defendants denied his accommodation request or coerced him.   Here, because Plaintiff does not allege that Defendants refused to consider his request or denied it after he provided the necessary documentation, his failure to accommodate claim fails.

**POINT V**

**PLAINTIFF FAILS STATE A CLAIM FOR CHRL FAILURE TO ENGAGE IN A COOPERATIVE DIALOGUE UNDER THE CITY HUMAN RIGHTS LAW**

The failure to engage in a cooperative dialogue is independently actionable under the CHRL. *See* Goldman v. Sol Goldman Invs., LLC, 2022 U.S. Dist. LEXIS 140927, at *5 (S.D.N.Y. 2022). Under the CHRL, it is an unlawful discriminatory practice for an employer to refuse or fail to engage in a cooperative dialogue within a reasonable time with an individual who has requested an accommodation. A cooperative dialogue is defined as an interactive process in which the employer and employee engage in good-faith written or oral discussions regarding the need for an accommodation, potential alternatives, and any challenges posed by such accommodations. N.Y.C. Admin. Code § 8-102. The interactive process may involve meeting with the employee, requesting medical documentation, considering the employee's request, and offering alternatives where appropriate. See Vangas v. Montefiore Med. Ctr., 6 F. Supp. 3d 400, 420 (S.D.N.Y. 2014); Rizzo v. N.Y.C. Dep't of Sanitation, 97 F. Supp. 3d 200, 228 (E.D.N.Y. 2015).

Plaintiff's claim that Defendants failed to engage in a cooperative dialogue is directly contradicted by his own allegations. Indeed, Plaintiff concedes that Defendants engaged in multiple discussions regarding his medical concerns, including meetings with BHS physicians, namely Dr. Cheung, Dr. Chandswang, and Dr. Hurwitz, to discuss his alleged reaction and request for an exemption. AC ¶¶ 74-76, 81. These discussions are hallmarks of the interactive process,

whereby Defendants made efforts to assess Plaintiff's request rather than rejecting it without having done so.

Plaintiff's claims fail because the undisputed facts demonstrate that Defendants engaged in the interactive process and that it was Plaintiff, not Defendants, who failed to follow through with the necessary and requested steps.  Plaintiff claims that after he met with an allergist, he was unable to obtain the test due to his use of prednisone. Id. ¶ 87. Plaintiff acknowledges that Defendants requested an allergy test to assess his alleged vaccine reaction, and that he did not provide results of that test to Defendants prior to receiving the vaccine. Id. ¶ 83. Plaintiff, in fact, concedes that he obtained the second dose of the vaccine the day after he met with the allergist. Id. ¶ 99.

However, an employer cannot be held liable solely for failing to engage in the interactive process when the breakdown in that process was due to a failure on the part of the plaintiff, and that breakdown resulted in the employer's failure to provide a reasonable accommodation. See Rochelle v. Autozoners, 2023 U.S. Dist. LEXIS 193446 (S.D.N.Y. 2023). Here, the facts are clear that Defendants did engage in the interactive process with Plaintiff by requesting an allergy test, and it was Plaintiff who failed to follow up with those results. Given that Plaintiff not only chose to disregarded Defendants' request, his failure to engage claim is entirely without merit. The facts alleged in the Amended Complaint wholly undermine any assertion that Defendants refused to engage in a cooperative dialogue.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Partial Motion to Dismiss be granted in its entirety, that the Amended Complaint be dismissed in all respects, and such other and further relief as the Court deems just and proper.

Dated:     New York, New York
            February 28, 2025

                                              **MURIEL GOODE-TRUFANT**
Corporation Counsel
of the City of New York
Attorney for Defendant
100 Church Street, Room 2-315
New York, N.Y. 10007-2601
(212) 356- 2695
rjeannit@law.nyc.gov


By: _____*Ruth F. Jeannite*_____
        Ruth F. Jeannite
Assistant Corporation Counsel

## **CERTIFICATE OF COMPLIANCE**

Counsel of Record hereby certifies that pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the enclosed memorandum of law contains approximately 6,824 words, which is less than the total words permitted by the rules of the Court. Counsel relies on the word count function of the computer program used to prepare this brief.

Dated: New York, New York
       February 28, 2025

By:    *Ruth F. Jeannite*
           Ruth F. Jeannite
           Assistant Corporation Counsel