# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

OBRIAN PASTRANA

*Plaintiff,*

v.

NEW YORK CITY FIRE DEPARTMENT,
NEW YORK CITY DEPARTMENT OF
HEALTH AND MENTAL HYGIENE, and
CITY OF NEW YORK,

*Defendants.*

**Case No. 1:24-cv-07348**

---

## PLAINTIFF'S MEMORANDUM OF LAW
## <u>IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

### *Oral Argument Requested*

_____
Christina Martinez, Esq.
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
ChristinaMartinezEsq@gmail.com

*Attorney for Plaintiff*

/s/ Sujata S. Gibson, Esq.
Gibson Law Firm, PLLC
120 E. Buffalo St, Suite 2
Ithaca, New York 14850
T: (607) 327-3284
sujata@gibsonfirm.law

*Attorney for Plaintiff*

**TABLE OF CONTENTS**

**Pages**

TABLE OF AUTHORITIES ……………………………………………….… iii

PRELIMINARY STATEMENT …………………………….…….……..… 1

STANDARD OF REVIEW ……………………………………….…..… 2

STATEMENT OF UNDISPUTED FACTS …………………………..…….….... 3

LEGAL FRAMEWORK …………………………………………….. 10

ARGUMENT ………………………………………………………... 12

I.   There is no genuine dispute that Plaintiff had a disability under the statutes ……. 12

II.   There is no genuine dispute that FDNY was on notice that Plaintiff was disabled. .16

III.   It is undisputed that Plaintiff could have continued his employment with reasonable accommodation.  …………………………………………. 21

IV.   It is undisputed that FDNY did not provide any accommodation to Plaintiff. ……. 22

V.   There is no undue hardship defense in this case.  …………………………..…… 23

CONCLUSION …………………………………………………….…... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aponte v. Olatoye*, 30 N.Y.3d 693, 700, 94 N.E.3d 466 (N.Y. 2018) …………….…….. 20

*Black v. ESPN, Inc.*, 70 Misc. 3d 1217(A), 139 N.Y.S.3d 523 (Sup. Ct., N.Y. Cty. 2021).. 15

*Cole v. Uni-Marts, Inc.*, 88 F. Supp. 2d 67 (W.D.N.Y. 2000) …………………………….. 12

*Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88 (2d Cir. 2003) ………...………… 23

*Cooney v City of New York Dept. of Sanitation*, 127 A.D.3d 629 (1st Dep't 2015) ……… 15

*Cruz v. Schriro*, 51 Misc. 3d 1203(A), 36 N.Y.S.3d 407 (Sup. Ct., N.Y. Cty. 2016) …. 15, 22

*Doe v Bloomberg L.P.*, 36 NY3d 450 (N.Y. 2021) …………………………………………... 11

*Jacobsen v. New York City Health and Hosps. Corp.,* 22 N.Y.3d 824 (N.Y. 2014) …..…… 23

*Limauro v. Consol. Edison Co. of New York, Inc.*,
2021 WL 466952 (S.D.N.Y. Feb. 9, 2021) …………….....…………………………………… 11

*McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92 (2d Cir. 2009) …………. 11

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013) ……….... 11

*Reed v. Nike, Inc.*, 2019 WL 2327519 (S.D.N.Y. May 31, 2019) …………….………… 22

*Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778 (S.D.N.Y. 2020) …………………..…….. 11, 23

*Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010) …………………………………...…… 12

*Stone v. City of Mount Vernon*, 118 F.3d 92 (2d Cir. 1997) …………….…….….……… 23

*Warmsley v. NYC Transit Auth.*, 308 F. Supp. 2d 114 (E.D.N.Y. 2004) …………....……. 16

**Statutes**

Federal Rule of Civil Procedure 56(a) …………………………………………………...….. 2

Local Civil Rights Restoration Act of 2005 ……………………………………….…....… 11

N.Y. Executive Law § 292 …………………………………………………………..…. 12

N.Y. Executive Law § 296 …………………………………………………….…….…… 11, 23

**TABLE OF AUTHORITIES (CONT.)**

**Page(s)**

**Statutes**

N.Y. Executive Law § 300 …………………………………………………..……... 11

N.Y.C. Admin. Code § 8–102 …………………………………………….. 12, 14, 23

N.Y.C. Admin. Code § 8–107 …………………………………………..….. 11, 24

N.Y.C. Admin. Code § 8-130 ……………………………………….….. 11, 12

N.Y.C.C.R.R. tit. 9, § 466.11 …………………………………………… 25

# PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Obrian Pastrana, moves for partial summary judgment against Defendants New York City Fire Department ("FDNY"), New York City Department of Health and Hygiene, and the City of New York ("City") with respect to Counts Two and Three of the Amended Complaint, for Failure to Accommodate in violation of the New York City Human Rights Law ("NYCHRL") and New York State Human Rights Law ("NYSHRL").

There is no genuine dispute about the material facts. The FDNY's own medical records and documentation establish that Plaintiff suffered a severe allergic reaction to his first dose of the COVID-19 vaccine—an ongoing reaction that required treatment with steroids and antihistamines, and which after the second dose, resulted in myocarditis. The FDNY's own physicians evaluated him during these episodes and ultimately found him permanently disabled as a result of vaccine-induced myocarditis. Defendants cannot now dispute what their own records confirm.

The only question before this Court is legal: Was the FDNY's refusal to accommodate Plaintiff's medically documented disability unlawful under the NYCHRL and NYSHRL? The answer is yes. Both laws require employers to reasonably accommodate known disabilities, absent undue hardship.

Despite CDC guidance identifying severe allergic reaction as a contraindication to further COVID-19 vaccination—and explicitly advising against continued antihistamine use around vaccination—FDNY nonetheless required Plaintiff to receive a second dose, while still experiencing ongoing symptoms from the first. The FDNY refused to consider any accommodation unless the employee submitted laboratory-confirmed allergy testing to a vaccine

1

component, a test that was medically contraindicated for Plaintiff at the time since he was taking steroidal medication and unnecessary given the FDNY's direct clinical observations.

Plaintiff easily satisfies the elements of his failure to accommodate claims. Because no genuine dispute of material fact exists, and because Defendants' conduct violated the plain text and spirit of the NYCHRL and NYSHRL, summary judgment should be granted in Plaintiff's favor, with the issue of damages reserved for trial.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). Summary judgment "is equally available to plaintiffs and defendants." *Engl v. Aetna Life Ins. Co.*, 139 F.2d 469, 472 (2d Cir. 1943). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Id.* A material fact is one that "might affect the outcome of the suit under the governing law," and a dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 284. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. *Id.* If this burden is met, the non-moving party must then present specific evidence, beyond mere allegations or denials, to show a triable issue exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff's Local Civil Rule 56.1 Statement of Material Facts in Support of Plaintiff's Cross-Motion for Partial Summary Judgment, dated June 2, 2025 ("SOMF"), along with the Declaration of Plaintiff dated May 31, 2025 ("Pl. Decl."), Affidavit of Kevin Whalan, dated February 14, 2025 (Whalan Aff.), Declaration of Robert Banome, dated June 2, 2025 (Banome Decl.), and Declaration of Stephen Fitzgerald, dated June 2, 2025 (Fitzgerald Decl.), sets forth the factual allegations relevant to this motion and are incorporated herein by reference. Key facts are repeated here as follows:

Obrian Pastrana, a dedicated New York City firefighter, rolled up his sleeve and received the COVID-19 vaccine by the City's October 29, 2021 deadline—not out of choice, but out of duty, determined to keep his job and support his family. (SOMF ¶7-8 (citing Pl. Decl. ¶5-7; see Ex. 1, Fire Commissioner's Application, p. 1; Ex, 16, State Court Verified Answer, ¶8)). He developed chills, sweats, body aches, arm soreness, hives, and swelling in his lips. (SOMF ¶9 (citing Pl. Decl. ¶8; Ex. 1, Fire Commissioner's Application, p. 1; Ex. 6, BHS Examination Reports, p. 3). The following day, he contacted the FDNY Bureau of Health Services ("BHS") to report that he needed medical leave due to an adverse reaction (SOMF ¶10; Pl. Decl. ¶9). FDNY placed him on medical leave from October 30 to November 2, 2021, and required him to report to BHS for evaluation (SOMF ¶¶12–13; Ex. 2, BHS MD-9 Summary, p. 4). BHS has a medical clinic that is staffed with medical officers who make determinations about FDNY firefighters placed on medical leave. (SOMF ¶ 11; Ex. 16, State Court Verified Answer ¶59).

On November 1, 2021, Mr. Pastrana was examined by FDNY physician Dr. Barbara Cheung, who formally diagnosed him with a "COVID-19 vaccine side effect" and classified it as "service-connected" (SOMF ¶14; Ex. 2, p. 4). He reported chills, sweats, body aches, injection-

site pain, lip swelling, and hives on his head (SOMF ¶15; Pl. Decl. ¶13; Ex. 1, Fire Commissioner's Application, p. 1). He explained that he had been taking over-the-counter medications, but they were ineffective (SOMF ¶16; Pl. Decl. ¶14). Critically, Mr. Pastrana expressed his fear about getting a second dose and explicitly asked not to receive it, explaining that his body was reacting severely (SOMF ¶17; Pl. Decl. ¶¶15–16). Dr. Cheung dismissed his concerns, telling him that he was required to be fully vaccinated in order to remain employed (SOMF ¶18; Pl. Decl. ¶17).

Over the next two weeks, Plaintiff's symptoms worsened. He experienced ongoing hives, swelling, chest pain, and shortness of breath that were unrelieved by medication (SOMF ¶¶19–20; Pl. Decl. ¶¶19–20). On three separate occasions between doses, he was woken in the middle of the night by intense facial swelling and hives so severe he feared they would obstruct his breathing (SOMF ¶21; Pl. Decl. ¶21). On November 15, 2021—after a particularly terrifying episode overnight—he visited his primary care physician, who prescribed prednisone to try to control the reaction (SOMF ¶¶22–23; Pl. Decl. ¶¶22–23). He then reported for duty, but several hours into his shift, his supervisor noticed that his face was swelling rapidly (SOMF ¶24; Pl. Decl. ¶24). The swelling spread down the left side of his body—including his torso, leg, and foot—alarming his supervisor so much that he called an ambulance (SOMF ¶¶25–26; Pl. Decl. ¶¶25–26). Mr. Pastrana was terrified. He received emergency intravenous treatment in the ambulance and was transported to the hospital, where he was prescribed epinephrine and additional steroids and diagnosed with a severe allergic reaction (SOMF ¶¶27–29; Pl. Decl. ¶¶27–29; Ex. 3, NYP After Visit Summary, Nov. 15, 2021).

The next day, November 16, 2021, Mr. Pastrana was required to return to BHS for what is known as a "field visit," the FDNY's protocol for in-the-line-of-duty injuries considered medically serious (SOMF ¶30; Pl. Decl. ¶30). There, he was evaluated by Dr. N. Chandswang, who observed

that Plaintiff's lips remained swollen despite hospital treatment the day before and ongoing prednisone use (SOMF ¶32; Pl. Decl. ¶31; Ex. 6, BHS Exam Report, p. 31).

Mr. Pastrana explained everything in detail: how his symptoms had started after the first dose, how he had awoken multiple times with alarming swelling of his face, lips, and mouth, and how terrified he was that he might stop breathing (SOMF ¶¶33–35; Pl. Decl. ¶¶32–33). He explained that he went to his primary doctor that morning and how his allergic reaction progressed severely while he was on duty at the firehouse, with the swelling affecting his face, lips, and entire left side of his body, including his torso, leg, and foot, requiring ambulance transport (SOMF ¶¶36–37; Pl. Decl. ¶34; Ex. 6, p. 31). He reported that he was still taking Benadryl, Zyrtec, Claritin, and now prednisone, but none of it was working (SOMF ¶¶38–39; Pl. Decl. ¶35; Ex. 6, p. 31).

Mr. Pastrana pleaded with Dr. Chandswang for a medical exemption. He said he could not tolerate a second dose in his condition (SOMF ¶40; Pl. Decl. ¶36). Dr. Chandswang responded that the only way to obtain a medical exemption was to undergo allergy testing to confirm an allergy to a component of the vaccine—something that Plaintiff's own symptoms already confirmed. (SOMF ¶41; Pl. Decl. ¶37; Ex. 6, p. 31). Plaintiff was told plainly that without the allergy test, he would be required to be fully vaccinated to continue working, regardless of his current condition (SOMF ¶42; Pl. Decl. ¶37). He was terrified, knowing that the second dose could trigger an even more catastrophic reaction—but he was told he had no choice (SOMF ¶43; Pl. Decl. ¶38). The FDNY's policy, as communicated to him by Dr. Chandswang, was that no employee could forgo the second dose without laboratory test results proving a vaccine allergy, regardless of medical contraindication or ongoing reaction (SOMF ¶44; Pl. Decl. ¶39; Ex. 6, p. 31). This was an official policy confirmed in writing in other cases. (*See, e.g.,* Whalan Aff. ¶¶13–15).

5

Mr. Pastrana was placed back on medical leave from November 15 through November 22, 2021 (SOMF ¶45; Pl. Decl. ¶42; Ex. 2, p. 4). But even on prednisone, his symptoms persisted, and he continued to suffer from hives, swelling of the face, lips, and nose, and shortness of breath (SOMF ¶46; Pl. Decl. ¶44). Once he discontinued prednisone as instructed, his condition worsened immediately. On November 21, 2021, he was again rushed to the emergency room due to the severity and worsening of his allergic reaction, including worse shortness of breath, swelling, and hives, and he was diagnosed with anaphylaxis (SOMF ¶47-48; Pl. Decl. ¶45; Ex. 4, Garnet Health After Visit Summary; Ex. 1). He was prescribed another 30-day course of prednisone in an effort to stabilize his condition (SOMF ¶48; Pl. Decl. ¶45; Ex. 4).

The day after his field visit to FDNY BHS, on November 22, 2021, Mr. Pastrana met with Dr. Jinlin Du, an allergist at Crystal Run Healthcare, in an attempt to obtain the allergy test FDNY required to qualify for a medical exemption (SOMF ¶49; Pl. Decl. ¶46). Dr. Du informed Mr. Pastrana could not get an allergy test because he was on prednisone to manage his ongoing allergic reaction—medication that interferes with the test's efficacy and safety (SOMF ¶50; Pl. Decl. ¶46). After that appointment, it became undeniably clear to Plaintiff that he could not safely obtain the required testing and therefore could not qualify for a medical exemption under FDNY's rigid policy (SOMF ¶51; Pl. Decl. ¶¶47–49).

Mr. Pastrana was left with no viable option. As noted by the Fire Pension Fund Board itself, firefighters are trained to "follow orders", and in this case, the order was absolute: get the second dose or lose your job. (SOMF ¶52; Ex. 8, Pension Fund Meeting Minutes, p. 102:5–20). The Board recognized, "The firefighter has no other choice. He either has a job or he has to take the vaccine." *Id*. With no accommodation offered and no way to meet the City's laboratory testing requirement,

6

Mr. Pastrana had no choice but to proceed with the second dose to avoid termination and continue supporting his family (SOMF ¶53; Pl. Decl. ¶¶47–49).

The employer's rigid policy was not a miscommunication or isolated act—it was the City's position, stated plainly in its motion to dismiss, that laboratory allergy test results were "necessary" to obtain a medical exemption (SOMF ¶54; Def. Mot. to Dismiss at 17–19; Pl. Decl. ¶¶37, 39; see also Whalen Aff. ¶¶13–15 (FDNY Chief Medical Officer admitting an official policy requiring a confirmed lab allergy test to vaccine components for exemption); *See, also* Banome Decl. ¶¶12, 14 (allergy test results required); Fitzgerald Decl. ¶4 (same)).

But FDNY was well aware that Mr. Pastrana had suffered a severe allergic reaction to the first dose, documented repeatedly by FDNY physicians, BHS records, and hospital summaries (SOMF ¶55; Pl. Decl. ¶¶7–45; Ex. 1, Fire Commissioner's Application, pp. 1–2; Ex. 3, NYP After Visit Summary; Ex. 6, BHS Reports; Ex. 7, Subchapter 2 Medical Board Rec., p. 2). Under CDC guidance in effect at the time, a severe allergic reaction following a prior dose of the COVID-19 vaccine is a contraindication to receiving additional doses (SOMF ¶56; Ex. 5, CDC Clinical Considerations, p. 2). Nothing in the CDC guidance requires a lab test. The CDC also explicitly advised against taking a COVID-19 vaccination while on antihistimines like prednisone, as they could mask symptoms of anaphylaxis and delay necessary treatment (SOMF ¶57; Ex. 5, p. 2). Despite this, the FDNY required Plaintiff to get a second dose while he was still experiencing an ongoing allergic reaction and actively taking antihistamines and steroids—treatments the CDC itself warned against in this context (SOMF ¶58; Pl. Decl. ¶¶37, 49; Ex. 6, BHS Exam Report, p. 31).

The FDNY never offered Plaintiff any alternative to the second dose—not even weekly testing, which had been granted to other similarly situated employees as a medical or religious accommodation (SOMF ¶59; Pl. Decl. ¶49).

Despite his fear and active allergic reaction, on November 23, 2021, Plaintiff received the second dose of the COVID-19 vaccine in order to avoid termination and continue providing for his family. (SOMF ¶60, citing Pl. Decl. ¶50). He has never returned to the firehouse (SOMF ¶61, citing Pl. Decl. ¶43; Ex. 2, BHS MD-9 Summary, p. 4). He believed that so long as he followed orders and took the second dose, if he died, at least his family would be financially protected by the FDNY. (SOMF ¶62, citing Pl. Decl. ¶50). His allergic reaction "worsened" after the second dose, with new and persistent symptoms including severe chest pain, shortness of breath, reduced oxygen levels, and spreading swelling and hives from his face to his extremities. (SOMF ¶¶63–64, citing Pl. Decl. ¶52; Ex. 1, Fire Commissioner's Application). On November 30, 2021, Pastrana was again rushed to the emergency room with facial swelling and hives, and was diagnosed with another allergic reaction. (SOMF ¶¶65–66, citing Pl. Decl. ¶53). He was treated with dexamethasone, prednisone, and famotidine. *Id*. The symptoms persisted: severe chest pain, fatigue, and shortness of breath. (SOMF ¶67, citing Pl. Decl. ¶¶53–54). He thought he was going to die (SOMF ¶68, citing Pl. Decl. ¶54).

As his condition failed to improve, Plaintiff was examined by the FDNY's Medical Committee (BHS Committee), which is composed of FDNY physicians and chaired by the FDNY Chief Medical Officer (SOMF ¶¶69–70, citing Ex. 16, State Court Verified Answer ¶¶59–60). On February 28, 2023, the BHS Committee, consisting of three FDNY physicians, examined Plaintiff and reviewed his medical records. They diagnosed him with myocarditis and allergic reaction to the COVID-19 vaccine (SOMF ¶¶73–75, citing Ex. 6, BHS Examination Reports, pp. 3–4; Ex. 1,

Fire Commissioner's Application, p. 2). Their opinion, endorsed by Chief Medical Officer Dr. Karen Hurwitz, concluded that Plaintiff was "unfit for firefighting duties" and at "increased risk for sudden incapacitation" based on MRI findings, documented allergic reaction to the COVID vaccine, and persistent symptoms including fatigue, chest pain, and shortness of breath (SOMF ¶76, citing Ex. 1, Fire Commissioner's Application, p. 2). BHS Dr. Anna Nolan reaffirmed the diagnosis of myocarditis, stating that Plaintiff "can be incapacitated suddenly thus is unfit permanently to RTFD [return to full duty]" (SOMF ¶77, citing Ex. 6, BHS Examination Reports, pp. 1–2). The report stated "vaccine side effect with associated myocarditis", and his diagnosis was again recorded as "COVID19 VACCINE SIDE EFFECT," marked as service-connected (SOMF ¶78, citing Ex. 6, BHS Examination Reports, pp. 1–2). As the City admitted, the CDC recognizes that COVID-19 vaccines may cause myocarditis and other cardiac conditions (SOMF ¶79, citing Ex. 16, State Court Verified Answer ¶67 n.4).

On March 10, 2023, FDNY Fire Commissioner Laura Kavanagh formally endorsed the Committee's findings and filed an application for Plaintiff's disability retirement "on orders of Fire Commissioner". (SOMF ¶80, citing Ex. 1, Fire Commissioner's Application). The application was received by the Fire Pension Fund (FPF) Board of Trustees on or about March 13, 2023. (SOMF ¶81, citing Ex. 16, State Court Verified Answer ¶64). On May 2, 2023, the Subchapter 2 Medical Board of the FPF reviewed Plaintiff's complete medical record and unanimously found him "permanently disabled as a consequence of myocarditis with ongoing symptoms, status post COVID vaccinations which precludes him from firefighting duties." The Board recommended that he be granted an Ordinary Disability Retirement (SOMF ¶¶82–84, citing Ex. 16, State Court Verified Answer ¶¶65–67; Ex. 7, Subchapter 2 Medical Board Recommendations, pp. 1–4). On

June 28, 2023, the FPF Board of Trustees voted to adopt that recommendation (SOMF ¶85, citing Ex. 16, State Court Verified Answer ¶83).

To this day, Plaintiff suffers from chronic shortness of breath, cardiac disability, fatigue, chest pain, and small fiber neuropathy (SOMF ¶91, citing Pl. Decl. ¶¶65, 76–77; Ex. 6, BHS Examination Reports, pp. 9, 3, 1; Ex. 7, Subchapter 2 Medical Board Recommendations, pp. 3–4). He requires long-term medications for heart failure, pain, and inflammation, and he carries both an inhaler and an EpiPen daily (SOMF ¶¶92–93, citing Pl. Decl. ¶¶80–83; Ex. 7, Subchapter 2 Medical Board Recommendations, pp. 3–4). His physical limitations have taken a toll on his family life—he can no longer play catch with his daughter or help around the house (SOMF ¶94, citing Pl. Decl. ¶¶65–67). He has lost his career, his health, and his physical capabilities, and lives with the knowledge that he will never again regain full heart function (SOMF ¶95, citing Pl. Decl. ¶¶65, 68; Ex. 6, BHS Examination Reports, p. 9).

Mr. Pastrana continues to receive mental health care from an FDNY therapist and has been diagnosed with PTSD and adjustment disorder with depressed mood (SOMF ¶96, citing Pl. Decl. ¶64; Ex. 6, BHS Examination Reports, pp. 5–6). He lives with intrusive thoughts, grief, anger, guilt, and the devastation of knowing that the vaccine he was forced to take cost him his health, career, and quality of life (SOMF ¶97, citing Pl. Decl. ¶68).

## LEGAL FRAMEWORK

The NYSHRL and NYCHRL require an employer to provide a reasonable accommodation to employees with disabilities. Pursuant to the NYCHRL, it is "an unlawful discriminatory practice" for an employer "not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the [employer]." New York City Admin. Code

§ 8-107(15)(a). The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for an employer… to refuse to provide reasonable accommodations to the known disabilities…of an employee…" N.Y. Executive Law § 296(3)(a).

To establish a *prima facie* claim for failure to accommodate under the NYSHRL and NYCHRL, "a plaintiff must make the following showing: (1) plaintiff is a person with a disability under the meaning of the [statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 790 (S.D.N.Y. 2020) (*citing McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009); *see* Executive Law § 296(3)(a); N.Y.C. Admin. Code § 8–107(1)(a); 15(a)-(b).

"[NYSHRL][1] provides protections broader than the [ADA], and [NYCHRL] is broader still." *Phillips v. City of N.Y.,* 884 N.Y.S.2d 369, 373 (1st Dep't 2009). The NYCHRL imposes "substantially broader" liability on employers than its state counterpart. *Doe v Bloomberg L.P.*, 36 NY3d 450, 462 (N.Y. 2021). "The Second Circuit has interpreted the amended NYCHRL as establishing a ' "one-way ratchet," by which interpretations of state and federal statutes can serve only "as a *floor* below which the City's Human Rights law cannot fall." ' " *Limauro v. Consol. Edison Co. of New York, Inc.*, 2021 WL 466952, at *4 (S.D.N.Y. Feb. 9, 2021) (quoting *Mihalik v. Credit Agricole Cheuvreaux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); Local Civil Rights Restoration Act of 2005, §1.

---

[1] Historically, the standards for recovery under the NYSHRL mirrored Title VII. However, a 2019 amendment to the NYSHRL directs courts to construe it liberally to achieve its remedial purposes, irrespective of how comparable federal laws have been interpreted. N.Y. Exec. Law § 300. This amendment aligns the NYSHRL more closely with the NYCHRL, which contains a similarly broad construction mandate. N.Y.C. Admin. Code § 8-130(a).

The NYCHRL commands that its provisions must be broadly construed for its remedial purposes, and "exceptions and exemptions…shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130 (a)-(b).

**ARGUMENT**

**I.    There is no genuine dispute that Plaintiff had a disability under the statutes.**

Plaintiff has a disability under the NYSHRL and NYCHRL. The NYSHRL defines "disability" broadly as "a physical, mental or medical impairment ... which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Executive Law § 292(21)(a). The NYCHRL defines disability even more broadly as "any physical, medical, mental or psychological impairment, or a history or record of such impairment", including "impairments of any system of the body; including but not limited to, respiratory organs,... speech organs; the cardiovascular system;  the hemic and lymphatic systems; the immunological systems; the skin..." New York City Admin. Code § 8-102.  Unlike the ADA, neither the NYSHRL nor the NYCHRL require that an impairment "limit a major life activity." *Cole v. Uni-Marts, Inc.*, 88 F. Supp. 2d 67, 73–74 (W.D.N.Y. 2000). As the Second Circuit has noted, the NYCHRL must be interpreted in light of its "uniquely broad and remedial purposes," which go beyond those of state and federal counterparts. *Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010).

Plaintiff's documented medical impairments easily satisfy the definitions of disability under both the NYSHRL and NYCHRL. After receiving the first dose of the COVID-19 vaccine, he developed hives, facial swelling, chills, sweats, and body aches, which progressively worsened. (SOMF ¶9 (citing Pl. Decl. ¶8; Ex. 1, Fire Commissioner's Application, p. 1; Ex. 6, BHS Examination Reports, p. 3)). Each day thereafter, his swelling and hives worsened. (SOMF ¶19

12

(citing Pl. Decl. ¶19)). Over-the-counter medications provided no relief. *Id*. Plaintiff's symptoms intensified, and included, chest pains and shortness of breath. (SOMF ¶20 (citing (Pl. Decl. ¶20)). After his first dose (and before his second dose), Plaintiff experienced severe swelling and hives. SOMF ¶21 (citing (Pl. Decl. ¶21)). On three separate nights during that period, he was abruptly awakened from sleep due to intense hives and facial swelling, which affected his lips, face, and nose, and was so severe that he had shortness of breath. *Id*. And the impairments did not resolve despite consistently taking Benadryl, Zyrtec, and Claritin. (SOMF ¶22 (citing Pl. Decl. ¶22)).

While on duty, Plaintiff's condition deteriorated due to the worsening and severity of his allergic reaction, which included rash, hives, and swelling in the face and lips, which spread to the entire left side of his body, to the point that he was taken by ambulance to the hospital for intravenous treatment, and was prescribed prednisone and epinephrine. (SOMF ¶¶24-29 (citing Pl. Decl. ¶24-29; Ex. 3, New York Presbyterian After Visit Summary, November 15, 2021)). He was placed on medical leave due to this event. (SOMF ¶45 (citing Pl. Decl. ¶42; Ex. 2, BHS MD-9 Summary, p. 4)). Despite constituent prescription corticosteroid treatment, Plaintiff continued to suffer from severe swelling of the head, face, mouth, nose, lips, as well as hives and shortness of breath. (SOMF ¶46 (citing Pl. Decl. ¶44)). When he discontinued prednisone, his symptoms worsened, prompting another emergency room visit due to shortness of breath and a worsening of his swelling and hives, where he was diagnosed with anaphylaxis, and prescribed prednisone for thirty days. (SOMF ¶47-48 (citing Pl. Decl. ¶45; Ex. 4, Garnet Health Medical Center After Visit Summary, November 21, 2021; Ex. 1, Fire Commissioner's application)). And this was all *before* the second dose. These impairments persisted even *after* the second vaccine dose, and he developed further complications including heart failure, myocarditis, chest pain, and decreased oxygen levels. (SOMF ¶¶ 76 -78, 84, 91 (citing Ex. 1, Fire Commissioner's Application, p. 2;(Ex.

6, BHS Examination Reports, p. 1-2; Ex. 16, State Court Verified Answer, ¶67; Ex. 7, Subchapter 2 Medical Board Recommendations, p. 3-4; Pl. Decl. ¶¶ 65, 76-77; Ex. 6, BHS Examination Reports, p. 9, 3, 1)). To this day, years later, he still suffers from permanent cardiovascular disability, chronic fatigue, chest pain, shortness of breath and small fiber neuropathy. (SOMF ¶ 91-92 (citing Pl. Decl. ¶¶ 65, 76-77, 80-82; Ex. 7, Subchapter 2 Medical Board Recommendation, p. 3-4; *see* Ex. 6, BHS Examination Reports, p. 9, 3, 1)).

Mr. Pastrana's symptoms impaired multiple systems explicitly listed in the NYCHRL: swelling of the lips and face implicates the speech organs; shortness of breath affects the respiratory and cardiovascular systems; systemic allergic and inflammatory reactions involve the hemic, lymphatic, and immunological systems; and persistent hives and swelling affect the skin. There is no genuine dispute about these impairments—they were documented through BHS and hospital records, emergency transport from the firehouse, medical treatment, and long-term medication. (SOMF ¶¶ 28-29, 37, 55, 92-93 (citing Pl. Decl. ¶¶ 28, 29, 34; Ex. 6, Ex. 3, New York Presbyterian After Visit Summary, November 15, 2021; BHS Examination Report, p. 31; Pl. Decl. ¶¶ 80-83; Ex. 7, Subchapter 2 Medical Board Recommendation (listing medical documentation and medical history); Ex 1, Fire Commissioner's Application (listing medical documentation and medical history)).

Plaintiff's undisputed impairments fall squarely within the NYCHRL's broad scope, which requires only a physical impairment of any system of the body. *See* N.Y.C. Admin. Code § 8-102. It also satisfies the NYSHRL's "normal bodily function" standard, as his ability to breathe, regulate immune response, and maintain integumentary function was clearly impaired and "demonstrable by medically accepted clinical techniques."

Moreover, Mr. Pastrana's condition was neither transient nor minor. Plaintiff required continuous steroid treatment, suffered relapse upon discontinuation, and was never medically cleared to return to work. SOMF ¶ 46-48, 61, 65-66 (citing Pl. Decl. ¶43-45, 53; Ex. 2, BHS MD-9 Summary, p. 4; Ex. 4, Garnet Health Medical Center After Visit Summary, November 21, 2021; Ex. 1, Fire Commissioner's application)). His symptoms emerged immediately after vaccination and steadily worsened, persisting to this day. (SOMF ¶91, citing Pl. Decl. ¶¶65, 76–77; Ex. 6, BHS Examination Reports, pp. 9, 3, 1; Ex. 7, Subchapter 2 Medical Board Recommendations, pp. 3–4); (SOMF ¶14-15 (citing Ex. 2, p. 4; Pl. Decl. ¶13; Ex. 1, Fire Commissioner's Application, p. 1). (SOMF ¶29 (citing Pl. Decl. ¶29; Ex. 3, New York Presbyterian After Visit Summary, November 15, 2021)).

New York courts have consistently recognized that far less severe allergic reactions and skin conditions qualify as disabilities under these statutes. In *Cooney v City of New York Dept. of Sanitation*, 127 A.D.3d 629 (1st Dep't 2015), psoriasis on the hands was held to be a disability. In *Black v. ESPN, Inc.*, 70 Misc. 3d 1217(A), 139 N.Y.S.3d 523 (Sup. Ct., N.Y. Cty. 2021), environmental allergies causing intermittent respiratory and skin symptoms were held sufficient under the NYSHRL. Most directly on point, in *Cruz v. Schriro*, 51 Misc. 3d 1203(A), 36 N.Y.S.3d 407 (Sup. Ct., N.Y. Cty. 2016), found that recurring episodes of hives, swelling, and breathing difficulty—similar to those here—constituted a disability under both statutes, even where the cause of the allergic reaction was unclear. Plaintiff's condition was more severe and persistent than those at issue in *Cruz*, requiring emergency treatment, intravenous medication, and long-term corticosteroid therapy.

Defendants' own records confirm Plaintiff's disability. After suffering a severe allergic reaction to the first dose, Plaintiff was placed on medical leave repeatedly, diagnosed by FDNY

with an allergic reaction to the COVID-19 vaccine and associated myocarditis, and never returned to the firehouse before receiving the second dose. SOMF ¶61, 73-76, 78 (citing Ex. 2, MD-9 Summary Report (listing all medical leaves); Ex. 6, BHS Examination Reports, p. 1-4)). He was later found permanently unfit for duty by FDNY. SOMF ¶¶ 73-80 (citing Ex. 6, BHS Examination Reports, p. 1-4; Ex. 1, Fire Commissioner's Application; Ex. 1, Fire Commissioner's Application, p. 2). And he was awarded Ordinary Disability Retirement. SOMF ¶¶ 81-87 (citing Ex. 16, State Court Verified Answer ¶¶ 64, -67, 83; Ex. 1, Fire Commissioner's Application; Ex. 7, Subchapter 2 Medical Board Recommendations, p. 1; Ex. 8, Fire Pension Fund Board Meeting Minutes, 119:12-16; Pl. Decl. ¶73-74; Ex. 18, Fire Pension Fund Determination)). An employer's own reference to an employee's condition as a "disability" and decision to bar the employee from returning to work shows the employer regarded the employee as disabled. The FDNY's determination that Plaintiff was permanently unfit due to a service-connected reaction demonstrates a substantial limitation on major life activities—including working—and even satisfies the standard under the ADA. *Warmsley v. NYC Transit Auth.*, 308 F. Supp. 2d 114, 121 (E.D.N.Y. 2004).

## II. There is no dispute of fact that FDNY was on notice that Plaintiff was disabled.

Both the NYCHRL and NYSHRL require an employer to accommodate the known disabilities of an employee. New York City Admin. Code § 8-107(15)(a); N.Y. Executive Law § 296(3)(a). Here, the undisputed facts demonstrate that the FDNY had ample notice of Plaintiff Obrian Pastrana's disability and need for accommodation yet failed to provide accommodation.

Pastrana's severe allergic reaction to the COVID-19 vaccine was apparent to his employer from the outset. It is undisputed that on October 29, 2021, Pastrana received his first dose of a COVID-19 vaccine (SOMF ¶7 (citing Pl. Decl. ¶7; Ex. 1 Fire Commissioner's Application, p. 1).

Within hours, he began experiencing allergic symptoms – including chills, swelling, and hives – indicating an adverse reaction (SOMF ¶9 (citing Pl. Decl. ¶8; Ex. 1, Fire Commissioner's Application, p. 1; Ex. 6, BHS Examination Reports, p. 3)). The very next day, Pastrana called out sick due to these symptoms and was placed on medical leave by the FDNY's medical division (SOMF ¶10, 12 (citing Pl. Decl. ¶9-10; Ex. 2, BHS MD-9 Summary, p. 4)).

Unlike most employers, the FDNY is intimately acquainted with employees' medical conditions. The FDNY Bureau of Health Services ("BHS") has a medical clinic that is staffed with medical officers who make determinations about FDNY firefighters placed on medical leave. When an FDNY firefighter is placed on medical leave, they are given a date to visit the BHS clinic for duty determination and preauthorization of care outside of the FDNY. (SOMF ¶11 (citing Ex. 16, State Court Verified Answer, ¶59)). When Pastrana reported to the FDNY BHS on November 1, 2021 (SOMF ¶13 (citing Pl. Decl. ¶11)), the FDNY's own medical staff definitively *documented* his vaccine-related illness. Pastrana was examined by FDNY physician Dr. Barbara Cheung, who diagnosed him with a "COVID-19 vaccine side effect" and even marked the condition as "service-connected" in his medical record (SOMF ¶14 (citing Ex. 2, BHS MD-9 Summary, p. 4; Pl. Decl. ¶12). During this examination, Pastrana informed Dr. Cheung in detail about his symptoms – the chills, swelling, hives and other allergic reactions he had experienced – and explicitly stated that he did not want to receive the second dose of the vaccine given how his condition was worsening (SOMF ¶15–17 (citing Pl. Decl. ¶13-16; Ex. 1, Fire Commissioner's Application, p. 1). Rather than recognize this as a sign that Pastrana was *was at risk of harm* due to his condition (and thus in need of an accommodation), Dr. Cheung dismissed his concerns. She told Pastrana that he "must" be fully vaccinated notwithstanding his reaction (SOMF ¶18 (citing Pl. Decl. ¶17-18)). At this point, FDNY had direct knowledge from its own doctor that Pastrana was experiencing an

adverse physical reaction – one listed by the CDC as a contraindication to further vaccination – and that he was in need of accommodation from the second dose due to his impairments.

FDNY's notice of Pastrana's disability only grew stronger in the following weeks. On November 15, 2021, while still on active duty at the fire house, Pastrana suffered a severe allergic reaction that underscored the seriousness of his condition. He experienced acute symptoms at work – severe swelling, hives, difficulty breathing, and chest tightness – so much so that his supervisor had to call an ambulance to the firehouse (SOMF ¶24–27 (citing Pl. Decl. ¶¶24-27)). Pastrana was rushed to the emergency room by ambulance, where he received emergency treatment for severe allergic reaction and prescribed epinephrine and prednisone. (SOMF ¶28–29; Pl. Decl. ¶¶28–29; New York Presbyterian After Visit Summary, November 15, 2021). The occurrence of this life-threatening episode at the workplace was witnessed by Plaintiff's supervisor and documented by BHS. (SOMF ¶¶30-31, 37 (citing Pl. Decl. ¶30-31, 34; Ex. 6, BHS Examination Report, p. 31). Thus, by mid-November, FDNY not only knew of Pastrana's initial vaccine reaction, but also that his condition had *worsened to the point of requiring hospitalization*. An employer in FDNY's position knew or certainly should have known by this juncture that Pastrana had a serious medical impairment and was in need of accommodation.

The very next day, November 16, 2021, Pastrana had a follow-up "field visit" with FDNY's Bureau of Health Services, where he was evaluated by another FDNY physician, Dr. Chandswang. (SOMF ¶¶30-31 (citing Pl. Decl. ¶30-31)). Despite having just been discharged from the ER, Pastrana dutifully reported for this evaluation while still taking prescribed steroids and still visibly suffering from swelling (SOMF ¶32 (citing Pl. Decl. ¶31; Ex. 6, BHS Examination Report, p. 31)). During the consultation, Pastrana again recounted in detail the chronology and severity of his allergic reactions. He told Dr. Chandswang that all his symptoms began after the first vaccine dose,

18

and described the repeated episodes he had suffered: the escalating hives and swelling, bouts of chest pain and shortness of breath, and his very real fear that he might stop breathing (SOMF ¶33–35 (citing Pl. Decl. ¶¶32–33)). Pastrana informed the doctor about his November 15, 2021, workplace incident and ER visit and the ongoing steroid treatment, explaining that even interventions like prednisone and over-the-counter antihistamines were only temporary fixes and that his symptoms kept flaring up. (SOMF ¶36–39 (citing Pl. Decl. Ex. 6, BHS Examination Report, p. 31)). Critically, Pastrana **expressly requested a medical exemption** from the second dose at this visit, pleading that due to his condition he should not be required to take another shot (SOMF ¶40 (citing Pl. Decl. ¶36)). In short, Pastrana could not have made the situation any clearer: he communicated to FDNY medical personnel that he had a serious vaccine-related medical problem and *needed an accommodation* in the form of being excused from further vaccination.

Dr. Chandswang's response on November 16 further confirms that FDNY was fully aware of Pastrana's potential need for an accommodation yet failed to offer any reasonable accommdodation. Rather than grant the requested exemption or even temporarily excuse Pastrana pending further evaluation, Dr. Chandswang told Pastrana that the only way to obtain a vaccine exemption was to undergo formal allergy testing, and that "no one" would be excused from the second dose without such testing (SOMF ¶41–44 (citing Pl. Decl. ¶¶37–39; Ex. 6, BHS Examination Report, p. 31)).

The FDNY's BHS physicians are licensed medical doctors, not bureaucrats or clerks. As trained professionals, they knew or should have known that Plaintiff's presentation—severe allergic reaction requiring epinephrine and steroid treatment, ongoing symptoms, and use of antihistamines—fit squarely within the CDC's published contraindications to further vaccination. The CDC expressly warned that patients like Plaintiff, who suffered an immediate or severe

allergic reaction to a prior COVID-19 vaccine dose, should not receive additional doses. (SOMF ¶56 (citing Ex. 5, CDC Contraindications, p. 2)). Nothing in the CDC's guidance required a laboratory confirmation of an allergy. Moreover, the CDC guidance cautioned against vaccination for people, like Mr. Patrana, who were on antihistimines, as they can mask symptoms of anaphylaxis and delay emergency care. SOMF ¶57 (citing Ex. 5, CDC Contraindications, p. 2)). Here, FDNY BHS physicians not only knew about Plaintiff's steroid and antihistamine use, they documented it in their own examination report. SOMF ¶58 (citing Pl. Decl. ¶¶ 37, 49; Ex. 6, BHS Examination Report, p. 31 ("given Benadryl and prescription for oral steroid and epi-pen)). That they nevertheless insisted Plaintiff receive a second dose, without regard for this guidance, reveals a rigid and dangerous indifference to both established medical science and the safety of their employee.

In sum, the record evidence demonstrates beyond genuine dispute that FDNY had notice of Pastrana's disability. FDNY's own doctors documented Plaintiff' severe allergic reaction and Pastrana personally notified multiple FDNY officials of his debilitating allergic reactions and inability to safely take a second dose. This actual knowledge is more than sufficient to trigger the protections of the NYSHRL and NYCHRL, which require accommodations for known disabilities. No particular formal request or incantation was necessary. *See Aponte v. Olatoye*, 30 N.Y.3d 693, 700, 94 N.E.3d 466, 469 (N.Y. 2018) (Rivera, J. concurring) ("No magic words are necessary to place NYCHA on notice that a disabled tenant requests a reasonable accommodation; a tenant need not use the words 'reasonable accommodation' or even reference applicable antidiscrimination laws"). Once apprised of Pastrana's condition, FDNY had a legal duty to accommodate his disability (or at least to initiate the required cooperative dialogue about possible

accommodations). Because FDNY was on notice of the disability and still failed to offer or even discuss any reasonable accommodation, it violated the NYSHRL and NYCHRL as a matter of law.

**III. It is undisputed that Plaintiff could have continued his employment with reasonable accommodation.**

It is undisputed that the Vaccine Mandate allowed for reasonable medical and religious accommodation. And it is undisputed that the FDNY not only could but did routinely accommodate other similarly situated firefighters. Dozens of City employees—including over 100 FDNY personnel—were granted medical and religious accommodations to the vaccine requirement. (SOMF ¶101 (citing Ex. 10, FAQs ¶ 23; Ex. 12, FDNY Tracking Spreadsheet)). Weekly PCR testing was the accommodation provided to all such employees. (SOMF ¶102–103 (citing Ex. 10, FAQs ¶¶ 24, 30, 32; Ex. 11, Nguyen Dep. 176:5–24)). Plaintiff could have continued to do his job unvaccinated with these same accommodations.

**IV. It is undisputed that FDNY did not provide any accommodation to Plaintiff.**

It is undisputed that Defendants never provided Plaintiff with any reasonable accommodation (SOMF ¶¶59, 116 (citing Pl. Decl. ¶49)). —not even weekly testing, which was routinely granted to similarly situated employees. (SOMF ¶108 (citing (Ex. 11, Nguyen Dep. 181:5-17; Banome Decl. ¶¶18-35; Fitzgerald Decl. ¶¶5-14; Whalen Aff. ¶¶19-34). Despite clear medical evidence from FDNY's own doctors that Plaintiff was suffering from an ongoing allergic reaction, and despite Plaintiff's repeated requests for a medical exemption, the FDNY made no effort to explore or offer any alternative—effectively denying accommodation outright. (SOMF ¶108 (citing Ex. 11, Nguyen Dep. 181:5-17; Banome Decl. ¶¶18-35; Fitzgerald Decl. ¶¶5-14; Whalen Aff. ¶¶19-34). Despite clear medical evidence from FDNY's own doctors that Plaintiff was suffering from an ongoing allergic reaction, (SOMF ¶55 (citing Pl. Decl. 7-45; Ex 1, Fire Commissioner's Application, p. 1-2 (FDNY Chief Medical Officer and Three Physician Medical Board diagnosed

Plaintiff with an allergic reaction to the COVID vaccine and confirmed in their report that Plaintiff had suffered an allergic reaction to the first vaccine dose, and that the allergic reaction worsened after the second dose); Ex. 7, Subchapter 2 Medical Board Recommendation, p. 2 ("A note from Dutchess Medical Associates, written 1/6/2022, indicated the member had an allergic reaction to COVID injections on 10/29/2021 and 11/22/2021."); Ex. 3, New York Presbyterian After Visit Summary; Ex. 6, BHS Examination Reports, p. 3 ("developed swollen lips, sweats, chills, and body aches after receiving COVID vaccine on 10/29"); Ex. 6, BHS Examination Report, p. 31)).

Under the ADA—which establishes the floor for the more expansive protections offered by the NYSHRL and NYCHRL—an employer may not impose unnecessary or medically inappropriate documentation demands once a disability is established. *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97–98 (2d Cir. 2003). FDNY violated this principle by requiring Plaintiff to undergo allergy testing that was medically contraindicated while he was being treated with prednisone and antihistamines, and more importantly while suffering active symptoms of severe allergic which contraindicated him from receiving the second dose pursuant to the CDC. (SOMF ¶56-58 (citing Ex. 5, CDC Contraindications, p. 2; Pl. Decl. ¶¶ 37, 49; Ex. 6, BHS Examination Report, p. 31 ("given Benadryl and prescription for oral steroid and epi-pen)).

Courts have repeatedly held that rigid, one-size-fits-all policies that foreclose individualized assessment of an employee's needs violate both the NYSHRL and NYCHRL. In *Reed v. Nike, Inc.*, 2019 WL 2327519, at *3 (S.D.N.Y. May 31, 2019), the court found that an employer's refusal to consider accommodations unless a specific condition was met—without regard to whether it was feasible—constituted a denial of accommodation. And under the NYCHRL, this obligation is even stronger. *Cruz v. Schriro*, 2016 WL 1173184, at *7 (N.Y. Sup. Ct. Mar. 24, 2016) (employers have an "independent, affirmative duty to investigate feasible accommodations"). That duty

22

applies especially where, as here, the disability is documented and apparent, and the requested accommodation—weekly testing—was being provided to others.

Moreover, where an employer's own policies or practices preclude the only viable accommodation available, courts hold that the failure lies with the employer, not the employee. *See Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 794–95 (S.D.N.Y. 2020) (rejecting employer's argument that the interactive process broke down due to the plaintiff's conduct where the employer's policies foreclosed the only reasonable accommodation). Here, Plaintiff did everything he could: he reported his condition, provided medical evidence, and explicitly requested an exemption. FDNY, by contrast, did nothing to accommodate him. It offered no alternatives, made no effort to engage in a cooperative dialogue, and instead clung to a medically irrelevant requirement. (*See* Section II above). This is not just a failure to accommodate—it is a textbook example of unlawful inflexibility in violation of the NYCHRL and NYSHRL. The FDNY did not need to confirm an allergy by test results; Plaintiff was living proof of his severe allergic reaction, and it was unreasonable to deny accommodation based on the absence of a test he was not able to take because of his disability.

## V.    There is no undue hardship defense in this case.

Once a plaintiff establishes a prima facie case under the NYCHRL or NYSHRL, the burden shifts to the employer to demonstrate that the proposed accommodation would impose an undue hardship. *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 790 (S.D.N.Y. 2020) (citing *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997)); *Jacobsen v. New York City Health and Hosps. Corp.,* 22 N.Y.3d 824, 834, 988 N.Y.S.2d 86, 11 N.E.3d 159 (N.Y. 2014); N.Y.C. Admin. Code § 8-102(18); N.Y. Exec. Law § 296(3)(b). Under the NYCHRL, the employer has the burden of proving undue hardship, New York City Admin. Code § 8-102(18), which is defined as "an

accommodation requiring significant expense or difficulty." New York City Admin. Code § 8–107(3)(b). The City cannot meet that burden here.

As a threshold matter, undue hardship is an affirmative defense. Defendants bear the burden on undue hardship and have provided zero discovery or evidence in support of this defense. Meanwhile, the evidence that is in the record shows that undue hardship was not at issue. It is undisputed that the FDNY routinely accommodated over a hundred employees. (SOMF ¶105 (citing Ex. 9, Nguyen Aff. ¶40; Ex. 11, Nguyen Dep 122:21-123:3)). This included at least 39 firefighters. (SOMF ¶109, 111, 113 (citing Ex. 12, FDNY tracking accommodation spreadsheet; Ex. 13, Vasquez, Def. Resps. to Pl.'s First Set of Interrogs, No. 5; *see* Ex. 11, Nguyen Dep. ¶ 159:12-14; Ex. 14, Vasquez, Def. Supplemental Resps. to Pl.'s First Set of Interrogs, No. 6-7)). Weekly testing was not speculative or novel; it was the standard accommodation applied across City agencies and departments. (SOMF ¶101-104 (citing Ex 10, FAQs at ¶¶ 23, 24, 30, 32; Ex. 12, FDNY Tracking Spreadsheet)). And weekly PCR testing was the accommodation provided to all FDNY employees. (SOMF ¶102–103 (citing Ex. 10, FAQs ¶¶ 24, 30, 32; Ex. 11, Nguyen Dep. 176:5–24; Ex. 11, Nguyen Dep. 176:5-24, 64:8-22; 169:4-13)). FDNY accommodated firefighters like Plaintiff, serving in full-duty roles, including those working in close proximity with the public and each other in shared firehouse living quarters. (SOMF ¶107 (citing Ex. 11, Nguyen Dep. 181:5–17; Banome Decl. ¶¶18–35; Fitzgerald Decl. ¶¶5–14; Whalen Aff. ¶¶19–34)). And FDNY allowed 1,176 employees to submit weekly testing in lieu of vaccination while their accommodation requests were pending. (SOMF ¶115 (citing Ex. 9, Nguyen Aff. ¶¶10, 13)).

Defendants have never raised undue hardship in this case and cannot offer any evidence—let alone evidence of a "significant difficulty or expense"—to explain why it could not provide weekly testing to Plaintiff. Under NYSHRL regulations, the employer must also conduct an individualized

24

assessment before denying accommodation on the basis of "direct threat." See N.Y.C.C.R.R. tit. 9, § 466.11. FDNY conducted no such assessment. It simply refused accommodation unless Plaintiff met a single, inflexible requirement that it knew he could not satisfy. That is not a hardship defense—it is a violation of law.

## CONCLUSION

Respectfully, this Court should grant partial summary judgment to Obrian Pastana on counts Two and Three of the First Amended Complaint.

Dated: Staten Island, New York
      June 2, 2025                      Respectfully submitted,

| | |
|---|---|
| _____ | /s/ Sujata S. Gibson, Esq. |
| Christina Martinez, Esq. | Gibson Law Firm, PLLC |
| Law Offices of Christina Martinez | 120 E. Buffalo St, Suite 2 |
| 245 Bricktown Way, Suite J | Ithaca, New York 14850 |
| Staten Island, NY 10309 | T: (607) 327-3284 |
| T: (347) 215-4543 | sujata@gibsonfirm.law |
| ChristinaMartinezEsq@gmail.com | |
| | Attorneys for Plaintiff |